**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| EAGLE BEAR, INC. and WILLIAM BROOKE, | **CV-21-88-GF-BMM** |
| Plaintiffs, | |
| vs. | **ORDER** |
| THE BLACKFEET INDIAN NATION and THE BLACKFEET TRIBAL COURT, | |
| Defendants. | |

**INTRODUCTION**

Eagle Bear, Inc. ("Eagle Bear") and William Brooke (collectively, "Plaintiffs") brought action against the Blackfeet Tribal Court and the Blackfeet Indian Nation ("Blackfeet Nation"). Plaintiffs seek declaratory and injunctive relief to prevent the Blackfeet Tribal Court from exercising jurisdiction over their dispute with the Blackfeet Nation. (Doc. 1.)

The dispute centers upon a lease agreement between Eagle Bear and the Blackfeet Nation. The Parties entered into that lease agreement on April 9, 1997. (Doc. 1-2.) The lease provided Eagle Bear 53.6 acres to operate a KOA campground within the exterior boundaries of the Blackfeet Nation's tribal land. (Doc. 1-2 at 2.)

The Blackfeet Nation discovered information during the course of BIA proceedings that caused it to believe that the BIA had cancelled the lease. (*See* Doc. 1-15 at 1.) The Blackfeet Nation, under the belief that the lease had been terminated, filed suit in Blackfeet Tribal Court against Eagle Bear. (Doc. 1-3.) The Blackfeet Nation's complaint sought the following relief: 1) illegal trespass seeking eviction; 2) accounting of Plaintiffs' rents and profits since June 10, 2008; 3) unauthorized use of Blackfeet Nation lands seeking illegally gained; 4) fraudulent misrepresentation seeking illegally gained profits; and 5) failure to follow the laws of the Blackfeet Nation seeking damages. (*Id.*)

Plaintiffs promptly brought this action. Plaintiffs sought a preliminary injunction to enjoin the Blackfeet Nation from pursuing its claims to profits and to enjoin the Blackfeet Tribal Court from considering or resolving those claims. (Doc. 4.) The Court denied Eagle Bear's Motion for a Preliminary Injunction. (Doc. 27.) The Court denied Eagle Bear's motion because the record before the Court required the determination that the lease agreement between Eagle Bear and the Blackfeet Nation had been cancelled. (*Id.* at 9-13.) The Court noted, however, that the record before it appeared incomplete and that the Parties were expected to continue developing the record before the Court would reach a final decision. (*Id.* at 3-4.)

The Blackfeet Nation filed a Motion to Dismiss Plaintiff's Complaint on September 17, 2021. (Doc. 21.) The Court held a hearing on the motion on January

19, 2022. (Doc. 16.) The Court postponed ruling on the Blackfeet Nation's Motion to Dismiss to ensure full development of the record. (*See* Docs. 47 and 53.) The Parties have continued to supplement and clarify the record.

Eagle Bear then sought a second preliminary injunction on May 6, 2022. (Doc. 50.) The Court scheduled a hearing on that motion for May 24, 2022. (Doc. 52.) Eagle Bear filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the District of Montana ("Bankruptcy Court") the day before that hearing. (Doc. 55.) The Court vacated the preliminary injunction hearing at Eagle Bear's request. (Doc. 58.)

On expedited review, the Bankruptcy Court determined that, because the Court had not conclusively ruled that the lease had been cancelled in 2008, the lease comprised part of Eagle Bear's bankruptcy estate. *In re Eagle Bear, Inc.*, 4:22-bk-40035-BPH (Bankr. D. Mont. May 31, 2021) (Doc. 63-1 at 4-7). The Bankruptcy Court declared that the automatic stay provision set forth in 11 U.S.C. § 362(a) would apply to the lease. *Id.* The Blackfeet Nation has moved to withdraw the reference to the Bankruptcy Court as it relates to the resolution of the 2008 lease cancellation. (Doc. 72-2.)

The Court determines that the bankruptcy stay provision of 11 U.S.C. § 362(a) would not have applied to this proceeding and that the Court must and will

permissively withdraw from the Bankruptcy Court the question of whether the lease

had been cancelled.

## ANALYSIS

**I.    The Court Grants the Blackfeet Nation's Motion to Withdraw Reference to the Bankruptcy Court**

### a. The Bankruptcy Stay does not apply to this proceeding

The Court first determines that the automatic stay provision set forth in 11

U.S.C. § 362(a) does not apply to this proceeding. The automatic stay provision

applies under the following circumstances:

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362 (emphasis added).

The bankruptcy stay provision applies only to claims *against* the debtor. Eagle

Bear's claim rests against the Blackfeet Nation and the Blackfeet Tribal Court. The

Blackfeet Nation alleges no counterclaims against Eagle Bear. The outcome of this

case—the Court's decision whether the Blackfeet Tribal Court plainly lacks

jurisdiction—, therefore, does not represent a proceeding against Eagle Bear. As

Eagle Bear has stated previously, "[a]s pled, this proceeding presents only a question

of the appropriateness of tribal court jurisdiction." (Doc. 1 at 15.) Eagle Bear

conceded that automatic stay would not apply to this proceeding at the hearing on the Motion to Withdraw Reference. (Doc. 74.)

The Court does not speculate on the application of the automatic stay to the tribal court proceeding. The Blackfeet Tribal Court proceeding may be subject to the automatic stay regardless of the outcome of this proceeding.

**b. The Court must withdraw the reference to the Bankruptcy Court to resolve the cancellation of the lease**

Federal district courts possess original jurisdiction over all bankruptcy matters. 28 U.S.C. § 1334(b). District courts may refer all bankruptcy matters to the bankruptcy court. 28 U.S.C. § 157(a). The United States District Court for the District of Montana refers bankruptcy matters to the bankruptcy court by Montana Federal District Court Standing Order No. DLC-43, which provides that: "Pursuant to 28 U.S.C. § 157, and to the extent consistent with Article III of the Constitution, all cases under title 11 of the United States Code and all proceedings arising under or arising in or related to a case under title 11 are REFERRED to the bankruptcy judges for this District."

Section 157(d) of Title 28 provides that, in certain circumstances, a case may be withdrawn from the bankruptcy court and transferred back to the district court from the bankruptcy court, by withdrawing the reference. 28 U.S.C. § 157(d). Withdrawal of the reference may be either permissive or mandatory. 28 U.S.C. § 157(d). The withdrawal of reference presents a matter of the district court's

discretion. *See In re Canter*, 299 F.3d 1150, 1155 (9th Cir. 2002); *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1007 (9th Cir. 1997).

A district court must withdraw the reference if it determines that resolution requires consideration of both Title 11 and "other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). In other words, this type of withdrawal requires that 1) the proceedings necessitate consideration of non-bankruptcy federal law; and 2) the non-bankruptcy federal law at issue "regulate[s] organizations or activities affecting interstate commerce." *Sec. Farms*, 124 F.3d at 1008. The withdrawal of the reference proves "mandatory" in such instances.

The Court first will address the consideration of federal law this case implicates. "[M]andatory withdrawal is required only when [non-title 11] issues require the interpretation, as opposed to mere application, of the non-title 11 statute, or when the court must undertake analysis of significant open and unresolved issues regarding the non-title 11 law." *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 945 (7th Cir. 1996); *see also In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2nd Cir. 1990). The statute limits mandatory withdrawal to "the presence of substantial and material questions of federal law." *Sec. Farms*, 124 F.3d at 1008.

Eagle Bear admits that "[t]he issues involved in the Lease Dispute are predicated upon the terms of the Lease and the requirements of 25 CFR Part 162 for

the cancellation of a lease." (Doc. 72-3 at 15.) Eagle Bear contends, however, that the issues pertaining to the Code of Federal Regulations involve only the "mere application" of 25 C.F.R. § 162. (*Id.*) Eagle Bear argues that mandatory reference would occur only if the question implicates "significant open and unresolved issues regarding" non-bankruptcy law. (*Id.*)

The "resolution of non-bankruptcy law [that proves] essential to the dispute" requires mandatory withdrawal. *In re Am. Body Armor & Equip.*, 155 B.R. 588, 590-91 (M.D. Fla. 1993). The lease cancellation dispute clearly presents open and unresolved issues regarding 25 C.F.R. § 162. Eagle Bear contends, as it has throughout litigation before this Court and during the BIA's administrative proceedings, that the lease still exists based on the terms of 25 C.F.R. § 162. (Doc. 72-3 at 2.) The Blackfeet Nation argues that the Code necessitates that the lease has been cancelled. (*Id.*) Those positions could no more clearly represent a dispute of the interpretation of federal law. In Eagle Bear's own words: "leases of tribal trust land are so comprehensively regulated by the federal government that their interpretation is a federal question." (Doc. 5 at 15-16 (citing 25 C.F.R. § 162).) The dispute in this case thus involves "complicated, interpretive issues" of BIA regulations. *Holmes v. Grubman*, 315 F. Supp. 2d 1376, 1379 (M.D. Ga. 2004).

The Court addresses the meaning of "interstate commerce" as it relates to withdrawal in this case. Eagle Bear also has argued that the lease activity occurred only in the State of Montana. (Doc. 72-3 at 2, 15.) Both parties appear to understand mandatory withdrawal under 28 U.S.C. § 157(d) to require establishing that Eagle Bear, as an entity, engages in interstate commerce. *See, e.g.*, (Doc. 72-3 at 2, 15); (Doc. 72-2 at 7.) Insofar as §157(d) addresses commerce in this manner, Eagle Bear has contended that because the leased land is contained entirely within one state, its claims implicate no interstate commerce.

At least one district court has rejected an identical argument. *See Kampgrounds of Am., Inc. v. N. Delaware A-OK Campground, Inc.*, 415 F. Sup. 1288, 1290-91 (D. Del. 1976), *aff'd*, 556 F.2d 566 (3d Cir. 1977) (analyzing a business's "interstate commerce" in a trademark dispute). As did the defendant campground in *Kampgrounds of America*, Eagle Bear "provides services to a transient population which customarily uses the nation's highways in interstate travel" and likely "advertises . . . in publications [or on websites] with national circulation." *Id.* Additionally, the lease at issue has allowed Eagle Bear, an affiliate of a national corporation, to cater to guests from around the world who travel to Glacier Park—one of the nation's most iconic parks. Given its patrons' likely composition, Eagle Bear is "clearly a facility of interstate commerce." *Marshall v. Whitehead*, 463 F. Supp. 1329, 1350 (M.D. Fla. 1978).

The Court also remains unconvinced that the parties correctly interpret the "interstate commerce" component of § 157(d). According to Defendants, the Ninth Circuit has not yet defined a clear rule governing mandatory withdrawal, including setting forth the contours of interstate commerce under § 157(d). *See In re Tamalpais Bancorp*, 451 B.R. 6, 8 (N.D. Cal. 2011). Nevertheless, district courts inside—and outside—the Ninth Circuit routinely interpret §157(d)'s mandatory withdrawal provision to require not that a debtor be engaged in interstate commerce, but rather that the non-bankruptcy federal *laws* at issue "regulat[e] organizations or activities affecting interstate commerce." *In re Roman Catholic Bishop of San Diego*, 2007 WL 2406899 at *2 (Bankr. S.D. Cal 2007). In other words, the question becomes whether "[t]he interpretation of the [non-bankruptcy federal law] . . . ha[s] a substantial impact on interstate commerce." *In re American Freight System, Inc.*, 150 B.R. 790, 793 (D.Kan.1993); *see also In re Walton*, 158 B.R. 939 (N.D.Ohio 1993).

The Court has determined that the federal law and regulations at issue in this case likely "regulat[e] conduct within the scope of interstate commerce." *In re Roman Catholic Bishop of San Diego*, 2007 WL 2406899 at *2. The comprehensive federal regulation of tribal leasing activity—including leasing for natural resource development, transportation, hospitality, and gaming, among other purposes—likely points to conduct within the Commerce Clause's scope. The Court has determined,

as discussed in the following section, that permissive withdrawal proves warranted.

This determination, on its own, warrants withdrawal and relieves the Court of the

burden to determine conclusively the full scope of §157(d)'s "affect [upon] interstate

commerce." 28 U.S.C. §157(d).

> **c.  The Court permissively will withdraw the reference to the Bankruptcy Court to resolve the cancellation of the lease**

A district court may withdraw the reference to the bankruptcy court "for cause

shown." 28 U.S.C. § 157(d). "In determining whether cause exists, a district court

should consider the efficient use of judicial resources, delay and costs to the parties,

uniformity of bankruptcy administration, the prevention of forum shopping, and

other related factors." *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1008 (9th

Cir. 1997); *In re Canter*, 299 F.3d 1150, 1154 (9th Cir. 2002). This consideration

remains "permissive."

The expedient resolution of whether the lease has been cancelled will ensure

the most efficient use of judicial resources and will reduce delay in the resolution of

this case. Eagle Bear frames the Motion for Withdrawal as removal of the entire

bankruptcy "main case." (Doc. 72-3 at 10.) Eagle Bear notes that the Bankruptcy

Court stands better suited to entertain the Chapter 11 issues given its procedures and

familiarity. (*Id.*) The Court need not so broadly withdraw the main case.

A "district court may withdraw, in whole *or in part*, any case or proceeding

referred" under 28 U.S.C. § 157(d). The Court will entertain only the issue of the

lease cancellation. Just as the Bankruptcy Court may be better suited to determine issues of bankruptcy law, so too this Court stands better suited to determine issues of non-bankruptcy code federal law. This Court already has heard arguments pertaining to the lease cancellation on both the Blackfeet Nation's Motion to Dismiss and Eagle Bear's Motion for Preliminary Injunction. The Court has requested continual updates of the record and has before it the discovery responses made by Eagle Bear. The most efficient use of judicial resources would be for this Court to resolve the lease issue. The Parties' rights and obligations will be clarified sooner than allowing the Bankruptcy Court to proceed without clarity over the lease cancellation. The tribal court proceeding has not been stayed, so allowing the Bankruptcy Court to analyze whether the lease has been cancelled only would duplicate proceedings and waste judicial resources.

The Court finally turns to the issue of forum shopping. This case presents a unique example of potential forum-shopping about which courts have expressed concern. *See, e.g.*, *Sec. Farms*, 124 F.3d at 1008-09. Eagle Bear has stated plainly that the purpose of filing for bankruptcy arose "in part as a result of the Blackfeet Nation's decision to lock the gate and block Eagle Bear and its customers from accessing the leased Campground." (Doc. 66 at 3.) The Court set a hearing to determine whether the Blackfeet Nation should be enjoined from blocking the gate to the campground for the day after Eagle Bear filed for bankruptcy. (Doc. 52); (Doc.

55); (Doc. 56.) This timing raises the question whether Eagle Bear used the automatic stay provision provided by the Bankruptcy Court, rather than continuing to pursue its motion before this Court, as a procedural means to effectuate its interests rather than pursuing a merits-based determination. The question of whether the lease has been cancelled should remain before the Court to deter potential forum shopping.

As noted above, the Court removing only the issue of non-bankruptcy code federal law will further the uniformity of bankruptcy administration. *See Sec. Farms*, 124 F.3d at 1007 (citing *In re Orion Pictures Corp.,* 4 F.3d 1095, 1101 (2d Cir.1993)). The Court determines that the Blackfeet Nation has shown good cause to withdraw the question of whether the lease has been cancelled.

## CONCLUSION

The Court will withdraw the broad question of whether the BIA cancelled the April 9, 1997 lease agreement between Eagle Bear and the Blackfeet Nation. Specifically, the Court will sever Count 1 in the adversary proceeding, *Eagle Bear, Inc. v. Blackfeet Indian Nation* (AP 22-04001). The Court will direct the Clerk of Court to create a companion case to this proceeding to house the now-severed Count 1.

The Court will answer with urgency the question of whether the lease has been cancelled. The Court tentatively adopts a revised version of the stipulated scheduling

order provided by the parties on July 21, 2022. The BIA stipulated to file its Answer

to the Amended Complaint in that proceeding no later than September 6, 2022. The

Court directs the BIA to file its Answer by October 11, 2022. The Court shall

schedule a status hearing for 11:00 a.m. on Wednesday, October 17, 2022, which the

Court requires the BIA to attend. The Court directs the BIA to be prepared to discuss

the following:

- Any information or evidence demonstrating the mailing of the January 15,
  2008 notice to Eagle Bear; the March 27, 2008 notice to Eagle Bear; and the
  April 4, 2008 notice to Eagle Bear.

- Any information or evidence demonstrating discussions between Eagle Bear
  and BIA staff between the June 10, 2008 notice of lease cancellation, and
  Eagle Bear's January 5, 2009 withdrawal of appeal.

The Court will permit, but not mandate, that Independence Bank attend the

October 17, 2022 hearing.

**ORDER**

Accordingly, **IT IS ORDERED** that:

- The Blackfeet Nation's Motion to Withdraw Reference (Doc. 68) is
  **GRANTED.**

- The Clerk of Court shall open a companion case to this proceeding for the now-severed Claim 1 from the adversary proceeding, *Eagle Bear, Inc. v. Blackfeet Indian Nation* (AP 22-04001).

- The United States Marshal Service shall serve this Order on the BIA, by US Mail, the Office of the United States Attorney for the District of Montana and shall provide transmittal notice of this Order in the adversary proceeding, *Eagle Bear, Inc. v. Blackfeet Indian Nation* (AP 22-04001).

- The parties to the adversary proceeding, *Eagle Bear, Inc. v. Blackfeet Indian Nation* (AP 22-04001), including the BIA, shall appear for a status hearing at 11:00 a.m. on Monday, October 17, 2022.

Dated this 26th day of September, 2022.

Brian Morris, Chief District Judge
United States District Court